IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE L. GARDNER, #284984,    )
                               )
PETITIONER,                    )
                               )
VS.                            )    CIVIL ACTION NO.
                               )    2:06-cv-413-WHA
KENNETH JONES, et al.,         )
                               )
RESPONDENTS.                   )

## ANSWER

Come now Respondents in the above-styled cause responding to this Court's order issued on May 10, 2006, and answer Gardner's § 2254 petition as follows:

1. The Montgomery County Grand Jury indicted Gardner for the capital murder of Travis Benefield while perpetrating a first-degree robbery, the first-degree robbery of Travis Benefield, the attempted murder of Ray Davis, the first-degree robbery of Ray Davis, two counts of conspiracy to commit murder, and two counts of conspiracy to commit first-degree robbery. (Ex. A[1], C. 39-47) Pursuant to a plea agreement, Gardner pleaded guilty to the capital murder of Travis Benefield, the attempted murder of Ray Davis, and the first-degree robbery of Ray

---

[1] Due to the voluminous nature of the exhibits they will be filed under separate cover with a corresponding table.

Davis on October 23, 2003. (Ex. A, C. 7, 31, 34, 57; SR.[2] 48, 50, 125-27, 162-64) In exchange, the State would not seek the death penalty, would waive the sentencing phase, and would recommend life in prison without the possibility of parole on the capital charge. (Ex. A, SR. 23, 144-45, 161-63) A jury also found Gardner guilty of the capital murder on October 28, 2003, as required by state law. (Ex. A, SR. 161)

2. As best the State can ascertain, Gardner raised the following issues in his federal habeas corpus petition:

a. The state court did not have jurisdiction to accept his guilty plea to capital murder of Travis Benefield, because the indictment did not specify that Gardner killed a person. (Gardner's pet., p. 6, 7)

b. Gardner could not be found guilty of the robbery of Ray Davis and the capital murder of Travis Benefield, because his charged crimes arose from the same crime, which was the robbery and murder which occurred in the Premium Package Store. (Gardner's pet., p. 6) Therefore, his right to be free from double jeopardy was violated.

---

[2] "SR." refers to the supplemental record included in the record on appeal in the state appeal of the denial of his state post-conviction petition. The record from the guilty plea colloquy was not included in the record on state appeal.

    c. His counsel was ineffective for failing to explain the law to him

    during the plea bargaining process so that he could make an

    informed choice as to whether or not to plead guilty; counsel failed

    to explain all of his options, and allegedly told him that he could

    plead guilty, or go to trial and receive the death penalty. (Gardner's

    pet., p. 6)

## Procedural History

### A.    Trial and Direct Appeal

3. As mentioned above, Gardner pleaded guilty, pursuant to a plea agreement to the capital murder of Travis Benefield, the attempted murder of Ray Davis, and the first-degree robbery of Ray Davis. (Ex. A, C. 7, 31, 34, 57; SR. 48, 50, 125-27, 162-64) In exchange, the State did not seek the death penalty, waived the sentencing phase, and recommended life in prison without the possibility of parole on the capital charge. (Ex. A, SR. 23, 144-45, 161-63) A jury also found Gardner guilty of capital murder on October 28, 2003. (Ex. A, SR. 161)

Facts Surrounding the Capital Murder Conviction[3]

4. Tawaskie Williams heard Delano "Pop" Smith, Willie "Wet Willie" Gardner -- the petitioner -- and Anthony "Ant" Fuller discuss robbing Premium Package Store, also known as Big Al's, days before the robbery and murder on

---

[3] A large portion of this narrative is derived from stipulated testimony that was presented to the jury.

September 3, 2001. (Ex. A, SR. 52, 69)  There existed animosity between the persons that ran the store, Travis Benefield and Ray Davis, and Gardner and Smith because Smith and Gardner would loiter around the store and were asked to leave by Mr. Benefield and Mr. Davis. (Ex. A, SR. 54)

5. On September 3, 2001, Tawaskie Williams joined Gardner, Fuller, and Smith in a dice game. (Ex. A, SR. 69)  He heard them discussing the robbery of Big Al's, and saw them loading handguns. (Ex. A, SR. 69)  They asked Mr. Williams if he wanted to participate, but he refused. (Ex. A, SR. 70)  Fuller, Smith, and Gardner then left and went to Gardner's home to change clothes.  After they had changed clothes, Mr. Williams saw them again, and they asked him once again if he wanted to participate in the robbery, but he refused again. (Ex. A, SR. 70)

6. Ray Davis and Travis Benefield worked at Big Al's on September 3, 2001. (Ex. A, SR. 52, 54)  Davis knew Gardner and Smith because they were regularly in the store. (Ex. A, SR. 53-54)  Taurus Hall entered the store, bought some cigarettes, and left. (Ex. A, SR. 55)  Taurus Hall was the "look-out" man who alerted the trio when it was clear to go inside and rob the store. (Ex. A, SR. 126)  Immediately thereafter, three persons, with masks covering only the lower part of their faces, came into the store with guns blazing. (Ex. A, SR. 55)  Mr. Benefield was shot twice. (Ex. A, SR. 55)  Mr. Davis managed to get on the floor

4

before getting shot. (Ex. A, SR. 55) They ordered Mr. Davis to open up the safe, and he was lead into the office by Gardner, whom he recognized. (Ex. A, SR. 57) Apparently Mr. Davis did not move fast enough, so Gardner fired the weapon into the floor close to Mr. Davis's feet. (Ex. A, SR. 59) Davis was able to get inside the office before Gardner could gain entry when Gardner shot him the first time. (Ex. A, SR. 59) Mr. Davis could not lock the door, and Gardner opened the door and shot him again. (Ex. A, SR. 59) Mr. Davis still managed to close the door, lock it, and call the 911 emergency number. (Ex. A, SR. 59) Mr. Davis was shot in the forearm and in the abdomen resulting in multiple wounds that required four surgeries. (Ex. A, SR. 60-61) He lost some function of his arm and had to wear a colostomy bag because of injuries to his internal organs. (Ex. A, SR. 61-62) Before his surgery, he told the police that Gardner was one of the perpetrators. (SR. 62) According to Davis's knowledge money and guns were stolen from the store, and Mr. Benefield died there at the store. (Ex. A, SR. 59-60) He identified the defendant as Willie "Wet Willie" Gardner. (Ex. A, SR. 68)

7. While Gardner is dealing with Mr. Davis in the store, it is apparent from a surveillance videotape that Anthony Fuller is emptying the cash registers, and Delano Smith is standing over Mr. Benefield. (Ex. A, SR. 58, 72-73, 119) Smith then shot Mr. Benefield in the back of the head killing him. (Ex. A, SR. 121) Smith then attempts to open up the locked office door, but is unsuccessful. (Ex. A,

SR. 121) Gardner, meanwhile walks to Mr. Benefield, stands over him, and steals

a gun, while Anthony Fuller is stealing items from underneath the counter. (Ex. A,

SR. 121) Smith then returns to the locked door to wipe off the door handle. (SR.

121) The three then leave the store. (SR. 122) The surveillance tape was played

for the jury while Detective Barnett, who led the investigation, narrates what is on

the tape. (Ex. A, SR. 97, 113-122)

8. Tawaskie Williams heard the gunshots, and saw the three perpetrators

wearing masks and carrying guns jump over a wall that separates Big Al's property

from the Tulane Court housing project. (Ex. A, SR. 71) "[H]e saw them act as if

they dropped something, saw them act as if they wanted to pick it up, but they

decided not to, and they took off running...." (Ex. A, SR. 71) Police found a gun

on the other side of the wall from Big Al's property, and bullet fragments taken

from Mr. Benefield's head were fired through that gun. (Ex. A, R. 80, 89) A

bullet recovered from Ray Davis "could have been fired through this gun, but the

results were inconclusive. The results were consistent with coming from another

gun of a similar type." (Ex. A, R. 89)

9. Travis Benefield sustained "two gunshot wounds to his head, two gunshot

wounds [to] his abdomen, and a grazed wound on his right forearm." (Ex. A, SR.

85) He died of multiple gunshot wounds. (Ex. A, SR. 85, 86)

6

10. The police went to Gardner's residence to speak to him when he became a suspect. (Ex. A, SR. 90)  They could not locate him, but told his mother to bring him to the police station if she found him. (Ex. A, SR. 90)  At approximately 3:30 a.m. on September 4, 2001, Gardner's mother brought him to the police station. (Ex. A, SR. 90-91)  Detective Barnett reviewed the juvenile right's form with Gardner and he indicated that he understood his rights. (Ex. A, SR. 102-105)  At that point in time, Gardner told Detective Barnett that he was at his girlfriend's house during the capital murder and robbery. (Ex. A, SR. 105)  Gardner was placed into custody for capital murder and taken to the Montgomery County Correctional Facility. (Ex. A, SR. 105)  The following morning, on September 5, 2001, Gardner wanted to speak to police again about the capital murder and robbery and wished to make a statement. (Ex. A, SR. 105-06)  Detective Barnett once again reviewed a juvenile rights form with Gardner, and Gardner indicated that he understood his rights and wished to waive them. (Ex. A, SR. 106-08)  Gardner also reviewed an adult rights form with Gardner because he was facing charges as an adult; Gardner indicated that he understood these rights and wished to waive them. (Ex. A, SR. 106-08)  Gardner then made a videotaped statement that was played for the jury. (Ex. A, SR. 108-09)  An audio version of the statement and a transcribed version were also introduced into evidence. (Ex. A, SR. 111-113)  The jury also learned that Gardner pleaded guilty to the capital

murder of Travis Benefield and the first-degree robbery of Ray Davis.  (Ex. A, SR. 124-127)

11. Montgomery Circuit Court Judge William Shashy sentenced Gardner to serve life without the possibility of parole for the capital murder charge on October 28, 2003, and to serve a life sentence on the attempted murder of Ray Davis and the first-degree robbery of Ray Davis.  (Ex. A, SR. 163-64)  The judge also ordered Gardner to pay restitution, court costs, attorney fees, and Crime Victims Compensation Assessments. (Ex. A, SR. 163-64)  The Alabama Court of Criminal Appeals dismissed Gardner's direct appeal, because it was untimely filed, on January 9, 2004.  (Ex. B)

**B.    State Post-Conviction Petitions**

12. Gardner filed his first, and only, Rule 32 post-conviction petition on August 22, 2004.  (Ex. A, C. 13)  He argued in his *pro se* petition: 1) His indictment was void because it failed to contain the essential element that he intentionally killed "another person".  (Ex. A, C. 15-24)  2) The trial court violated his right to be free from double jeopardy because it convicted him of the capital murder of Travis Benefield, in count one of the indictment, and the first-degree robbery of Ray Davis, in count four of the indictment, even though both crimes occurred during the same transaction.  (Ex. A, C. 25-26)  3) His trial counsel was ineffective for failing to explain the lesser-included offenses of capital murder to

him; trial counsel allegedly told Gardner that "he would be sentenced to death if [he did] not accept the plea of guilty[.]" If his attorney "had explained that there was any possible chance of the jury bringing back any other verdict besides that of Capital Murder[,] [he] would have elected to proceed to trial due to him not being the trigger man and having no intentions to cause the death of anyone." (Ex. A, C. 26-27)

13. The State requested summary dismissal of Gardner's petition on October 8, 2004. (Ex. A, C. 31) It argued that Gardner's first claim was without merit because the indictment stated that Gardner "intentionally cause[d] the death of Travis Benefield" and that later in the indictment it stated that Gardner "use[d] force against the person of Travis Benefield" connoting that Travis Benefield was indeed a person. (Ex. A, C. 32-33, 39) (emphasis added) The State also argued that Gardner did not meet the Blockburger v. United States, 284 U.S. 299, 304 (1932), test, because the elements of the first-degree robbery of Ray Davis required elements that the capital murder of Travis Benefield did not and vice versa; therefore, there was not a double jeopardy violation. (Ex. A, C. 33-34) Finally, concerning the State's ineffective assistance of counsel claim, the State argued that Gardner did not meet his burden under Strickland v. Washington, 466 U.S. 668, 687 (1984). The State argued:

> [Gardner] agreed to plead guilty, and he was then found guilty
> of capital murder by a jury as required by Ala. Code § 13A-5-42.

Even if [Gardner] was able to prove that his attorneys were inadequate, he cannot show that he was prejudiced by that inadequacy. After [Gardner] pled guilty to the capital murder of Travis Benefield, he was found guilty of capital murder following the required jury trial. Given the additional finding of guilty by a jury, [Gardner] cannot realistically argue that there is a "reasonable probability" that, but for Mr. Belser and Ms. Hollis' allegedly deficient performance, the result of Gardner's case would have been any different. See Burnett [v. State], 644 So. 2d [57,] 58 [(Ala. Crim. App. 1994)]. See also Howard [v. State], 551 So. 2d [1155,] 1158 [(Ala. Crim. App. 1989)].

(Ex. A, C. 36)

14. The trial court dismissed Gardner's petition on November 15, 2004, without a hearing. (Ex. A, C. 56-58) It held that Gardner's claim concerning the indictment was without merit, and he failed to plead and prove his claim with specific facts necessary to entitle him to relief. (Ex. A, C. 56, 57) The trial court also held that Gardner's double jeopardy claim was without merit because "each of the counts that [Gardner] pled guilty is a separate offense which required proof of an additional element that the other did not." (Ex. A, C. 57) The court held that Gardner's ineffective assistance of counsel claim was without merit.

[Gardner] failed to show that but for counsel's alleged errors that the outcome of his trial and/or plea would have been different in accordance with Strickland v. Washington, 466 U.S. 668 (1984). Aside from that, [Gardner] plead[ed] guilty and this Court took extra lengths to make sure that [Gardner]'s plea was entered voluntarily and that all of his rights were protected. [Gardner]'s counsel are well known and well respected criminal defense attorneys and represented [Gardner] in an exceptional manner.

(Ex. A, C. 57)

The court also determined that Gardner failed his burden of pleading and proof under Rule 32.3 of the Alabama Rules of Criminal Procedure, and that his claims lacked the required specificity under Rule 32.6(b) of the Alabama Rules of Criminal Procedure. Gardner filed a notice of appeal on December 13, 2004. (Ex. A, C. 59)

15. In his brief to the Alabama Court of Criminal Appeals, Gardner raised the following issues: The trial court erred when it denied his petition without a hearing and failed to adequately address his claim that the indictment was invalid because it failed to allege that he intentionally caused the death of another person or human being (Ex. C, p. 11-22); his right to be free from double jeopardy was violated when he was convicted of capital murder of one victim and the robbery of another, which both arose out of the same incident (Ex. C, p. 23-25); and, 3) trial counsel was ineffective for failing to inform him that it was possible he could have been found guilty of felony murder or murder if he went to trial; therefore, his plea was not voluntarily entered. (Ex. C, p. 25-27)

16. The State filed its brief in response, and the Alabama Court of Criminal Appeals issued a memorandum opinion on May 20, 2006, affirming the denial of the Rule 32 petition. (Ex. D & E) The Court determined that Gardner's attack on the indictment had no merit because Travis Benefield was named as a person in the

indictment. (Ex. E, p. 3) It also determined, citing <u>Blockburger v. United States</u>, 284 U.S. 299 (1932), that Gardner's freedom from double jeopardy rights had not been violated by finding him guilty of the capital murder of Travis Benefield and the robbery of Ray Davis

Next, Gardner claims that he was subjected to double jeopardy because the capital murder of Travis Benefield and the robbery of Ray Davis arose out of the same incident. Because the murder of Travis Benefield required different elements to prove the crime than the robbery of Ray Davis and vice versa, Gardner's right to be free from double jeopardy was not violated.

This Court noted in <u>Ivey v. State</u>, 698 So. 2d 179 (Ala. Crim. App. 1995), aff'd, 698 So. 2d 187 (Ala. 1997)

"'The "same evidence [or element]" test of <u>Blockburger</u>[<u>v. United States</u>, 284 U.S. 299 (1932)] is stated as follows: 'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." <u>Blockburger</u>, 284 U.S. at 304, 52 S.Ct. at 182.' <u>State v. Patton</u>, 669 So. 2d 1002, 1004 (Ala. Crim. App. 1993)."

698 So. 2d at 183.

Section 13A-6-2(a)(1), Ala. Code 1975 provides that "[a] person commits the crime of murder if: (1) With intent to cause the death of another person, he causes the death of that person or of another person...." Section 13A-5-40(a) (2), Ala. Code 1975, provides that murder is made a capital offense when it is committed ". . .during a robbery in the first degree or an attempt thereof committed by the defendant." Section 13A-8-43 provides that "[a] person commits the crime of robbery in the third degree if in the course of committing a theft he: (1) Uses force against the person of the owner or any person

present with intent to overcome his physical resistance or physical power of resistance...." Finally, Section 13A-8-41(a) states that "[a] person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he: (1) Is armed with a deadly weapon or dangerous instrument; or (2) Causes serious physical injury to another."

Under Gardner's indictment, capital murder required an intentional killing of Travis Benefield, which was not required to commit the robbery of Ray Davis; conversely, the first degree robbery of Ray Davis required the intentional taking of property by force from Ray Davis, which was not required to prove the capital murder of Travis Benefield. Thus, the trial court correctly denied any relief as to this claim.

(Ex. E, p. 4-5)

17. The Court also determined that Gardner voluntarily pleaded guilty because there is no requirement that a defendant be informed of the lesser-included offenses of his crime to accept the guilty plea. (Ex. E, p. 5) The Court also noted that the trial court "ascertained that Gardner was entering this plea of guilty to capital murder because he was, in fact, guilty of that offense. Thus, Gardner's claim that his plea was involuntary because he did not know of the lesser-included offenses of capital murder is without merit." (Ex. E, p. 5) The Court of Criminal Appeals also addressed Gardner's ineffective assistance of counsel claims:

Moreover, Gardner did not meet his burden of pleading and proving that he received ineffective assistance of counsel with specific facts that would entitle him to relief. Thus, the trial court did not err when it held that Gardner did not meet the criteria outlined in Strickland v. Washington, 466 U.S. 668 (1984), and in denying relief as to this claim.

In <u>Strickland</u>, <u>supra</u>, the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.

Rule 32.3, Ala.R.Crim.P., states that " [t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala.R.Crim.P., states that " [t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."

> "A petition is 'meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. <u>Ex parte Boatwright</u>, supra; <u>Ex parte Clisby</u>, 501 So.2d 483 (Ala.1986) ."

<u>Moore v. State</u>, 502 So.2d 819, 820 (Ala.1986).

Although Gardner argues that he would not have pleaded guilty had his counsel told him there was a possibility that the jury would have found him guilty of murder or felony murder as a lesser-included offense of capital murder, his petition contained no specific facts supporting this claim which would entitle him to relief. Indeed, Gardner's claim that the jury could have convicted him of either of the

14

aforementioned lesser-included offenses is wholly unsupported by the record, which contains a transcript of the evidence presented by the State during the "trial phase" of his plea proceeding. Our review of the evidence presented indicates that the evidence against Gardner was overwhelming, including the eyewitness testimony of the one victim who survived the robbery and shootings at the Premium Package Store. Ray Davis testified that he was able to identify Gardner as one of the four males who entered the store, forced him to open the store's safe, and shot both store employees, killing Travis Benefield as he lay begging for his life and seriously wounding Davis. Moreover, evidence was presented that another person overheard Gardner and his cohorts planning the robbery several days before the robbery-homicide occurred.

Although a defendant is entitled to a charge on a lesser offense if there is any evidence supporting the charge, Ex parte Hannah, 527 So. 2d 675 (Ala. 1988), charges on lesser- included offenses should not be given where the evidence permits no reasonable conclusion other than that the defendant is guilty as expressly charged or is not guilty of any offense. Love v. State, 677 So. 2d 1272 (Ala. Crim. App. 1996). Assuming Gardner's claim is true, given that no evidence supported an instruction on either murder or felony murder, it would have been unwise for Gardner's counsel to have offered him false hope that the court would instruct the jury on lesser-included offenses or that the jury would somehow disregard eyewitness testimony to convict him of any offense other than capital murder in the death of Travis Benefield. Thus, we fail to see how counsel could have been ineffective for failing to advise him about the existence of lesser-included offenses when the evidence did not support instructing the jury on these charges.

(Ex. E, p. 5-7)

18. Gardner filed an application for rehearing and brief in support of the

application, along with a statement of additional or corrected facts on June 1, 2005.

(Ex. F) In the application and brief, he appears to reiterate his arguments that the

indictment was void because it failed to allege that he killed a person, and that his

counsel was ineffective for failing to explain to him the lesser-included offenses

that, possibly, could have been given to him.  (Ex. F, p. 5, 8-9, 15, 19-23, 25-28)

He appears, however, to abandon his double jeopardy argument, in favor of

attacking the factual basis to accept his guilty plea.  (Ex. F, p. 5-8, 15, 23-25)  The

Alabama Court of Criminal Appeals overruled Gardner's application for rehearing

on June 10, 2005.  (Ex. G)

      19. Gardner then petitioned the Supreme Court of Alabama for certiorari

review on June 24, 2005. In his petition, he raises the following issues: 1) There is

an issue of first impression concerning whether the Court of Criminal Appeals

erred in holding that his indictment sufficiently tracked the language of the statute.

(Ex. H, p. 2)  2) Whether there is a conflict of law between the quoted passage

from Ivey v. State, 698 So. 2d 179, 183 (Ala. Crim. App. 1995),  (Ex E, p. 4), and

Powell v. State, 854 So. 2d 1206, 1208 (Ala. Crim. App. 2002), which Gardner

quoted as, "('When the same conduct of a defendant may establish the commission

of more than one offense, the defendant may be prosecuted for each such offense.

He may not, however, be convicted of more than one offense if ... [o]ne offense is

included in the other.')."  (Ex. H, p. 3)  3) The Alabama Court of Criminal

Appeals, concerning issue two from the appeal (the double jeopardy issue) was in

conflict with Verzone v. State, 841 So. 2d 312, 314 (Ala. Crim. App. 2002), which

requires that a copy of the plea colloquy be in the record to determine if the

appellant's arguments were preserved for review (Ex. H, p. 3-4); and, 4) Whether

the Court of Criminal Appeals memorandum opinion quoting Moore v. State, 502

So. 2d 819, 820 (Ala. 1986), (Ex. E, p. 6), conflicts with the state court opinion of

Pugh v. State, 729 So. 2d 359, 360 (Ala. Crim. App. 1998), which Gardner quotes

as, "To prevail on a claim of ineffective assistance of counsel, in connection with

guilty plea, petitioner must show that but for counsel's errors, he would not have

pleaded guilty, but insisted on proceeding to trial." (Ex. H, p. 4)

    20. Gardner also filed a Motion to Suspend the Rules, alleging that he did

not have access to the new rules of the Supreme Court of Alabama, and therefore,

requested that he be allowed to follow the rules that predated the June 1, 2005

amendments. (Ex. I) Gardner also filed a brief in support of his petition on June

24, 2005. (Ex. J) The Supreme Court of Alabama allowed the petition to be filed,

but struck the brief, as non-compliant with the new rule concerning certiorari

review, which does not allow a petition to be filed until certiorari review has been

granted, under Rule 39(b)(4) of the Alabama Rules of Appellate Procedure. (Ex.

K) The Supreme Court of Alabama denied Gardner's petition and issued its

certificate of judgment on January 13, 2006. (Ex. L)

**C.**    **Federal Habeas Corpus Petition**

    21. Gardner filed his federal habeas corpus petition on April 24, 2006.

(Gardner's pet., p. 9)

**Argument**

**I.    Claim One--Indictment Is Void For Failing To Specifically State that Gardner Killed A Person.**

**A.    Fails to State a Claim Cognizable in Federal Court**

22. Gardner's first claim is that his indictment is apparently void because it failed to specifically state in the capital murder charge that Travis Benefield was a person. (Gardner's petition, p. 6)  This claim does not implicate a federal constitutional right, and is therefore, not cognizable in this petition.  Federal habeas corpus review is limited to claims that arise from a violation of the United States's Constitution, laws, or treaties.  28 U.S.C. § 2241(c)(3) (West 2004).  The United States Supreme Court reiterated in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991):

> [This Court] ha[s] stated many times that "federal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); see also Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241 [West 2004]; Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam).

See also Nelson v. Estelle, 642 F.2d 903, 905 (5th Cir.[4] 1981) ("[F]ederal habeas corpus is available only for the vindication of rights existing under federal law....")

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit decided before October 7, 1981.

More specifically, concerning Gardner's indictment, "The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction." DeBenedictis v. Wainwright, 674 So. 2d 841, 842 (11th Cir. 1982). The indictment sufficiently tracked the language of the statute placing Gardner on notice of what to defend against. (Ex. E, p. 3)

## II.    Claim Two--Gardner's Conviction for the Capital Murder of Travis Benefield and the First-Degree Robbery of Ray Davis Violates Double Jeopardy Because Both Crimes Arose From the Same Course of Conduct.

### A.    Exhaustion, Procedural Default, and Failure to Raise a Federal Issue

23. Gardner failed to raise this issue, as a federal issue, throughout the Alabama appellate courts as required to properly exhaust a claim in state court.

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003) (holding that O'Sullivan applies to post-conviction remedies); Smith v. Jones, 256 F.3d 1135, 1140-41 (11th Cir. 2001) (requiring

presentation of claims to the Supreme Court of Alabama for discretionary review to exhaust the claims under O'Sullivan).

24. In Gardner's certiorari petition to the Alabama Supreme Court, Gardner does not raise a federal issue, but merely alleges that two state court decisions conflict, Ivey v. State, 698 So. 2d 179, 183 (Ala. Crim. App. 1995), (Ex E, p. 4), and Powell v. State, 854 So. 2d 1206, 1208 (Ala. Crim. App. 2002). (Ex. H, p. 3) Although, the quoted language from Ivey does cite Blockburger v. United States, the gist of Gardner's argument is that the two state court opinions conflict with one another. (Ex. H, p. 3) The Supreme Court of Alabama would not be alerted that Gardner is raising a federal issue. The state appellate courts throughout the appellate process must be able to recognize that the litigant is raising a federal issue. In Duncan v. Henry, 513 U.S. 364, 365-66 (1995), the Supreme Court held:

> In Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), we said that exhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.

Gardner failed to alert the state supreme court that he is raising a federal issue; therefore, the issue was not exhausted, as a federal claim, in state court.

25. Furthermore, Gardner would be barred from returning to state court and raising this claim, as a federal claim, by the procedural bars of Rule 32.2 of the Alabama Rules of Criminal Procedure. First, Gardner's conviction became final on direct appeal on December 9, 2003 -- 42 days from his sentencing date -- under Rule 4(b)(1) of the Alabama Rules of Appellate Procedure. Therefore, under Rule 32.2(c) of the Alabama Rules of Criminal Procedure, any petition now filed in state court, raising this federal claim, would be outside of the one-year limitation period that ended on December 9, 2004. Second, Gardner's claim would also be barred by Rule 32.2(a)(4), which states:

> A petitioner will not be given relief under this rule based upon any ground ... [w]hich was raised or addressed on appeal or in any previous collateral proceeding not dismissed pursuant to the last sentence of Rule 32.1 as a petition that challenges multiple judgments, whether or not the previous collateral proceeding was adjudicated on the merits of the grounds raised[.]

The Alabama Court of Criminal Appeals decided on appeal from the denial of his first post-conviction petition that his convictions for the capital murder of Travis Benefield and the robbery of Ray Davis did not violate the principle to be free from double jeopardy. (Ex. E, p. 4-5) Finally, the claim would be barred by Rule 32.2(b) of the Alabama Rules of Criminal Procedure, which bars successive petitions.

## B.    Decision Not Contrary to Federal Law

26. The Alabama Court of Criminal Appeals correctly utilized the framework outlined in Blockburger v. United States, 284 U.S. 299 (1932), to properly determine that Gardner's convictions for the capital murder of Travis Benefield and the robbery of Ray Davis did not violate the tenets forbidding double jeopardy.  (Ex. E, p. 3-4)  This Court can only grant habeas relief " if the relevant state-court decision was either (1) 'contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." (Emphases added.) Williams v. Taylor, 529 U.S. 362, 404-405 (2000).

> The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and [The Supreme Court of the United States] stressed in Williams that an unreasonable application is different from an incorrect one. Id., at 409- 410, 120 S.Ct. 1495. See also id., at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. 685, 694 (U.S. 2002).

27. The test for determining whether Gardner's convictions violate double jeopardy was outlined in Blockburger, 284 U.S. at 304.  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two

offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. The State was required to prove the intentional killing of Travis Benefield to convict Gardner of the capital murder; this was not required to prove that he robbed Ray Davis. See Ala. Code §§ 13A-5-40(a)(2) and 13A-6-2(a)(1) (1994). Also, to prove the first-degree robbery of Ray Davis, the state needed to prove that Gardner used force or the threat of force against Davis during the commission of a theft, and that Davis either was armed with a deadly weapon or caused serious physical injury to another person, which was not required to prove the capital murder of Travis Benefield. See Ala. Code §§ 13A-8-41(a)(1) and 13A-8-43(a)(1) (1994). Therefore, the Alabama Court of Criminal Appeals correctly concluded based on Blockburger that no double jeopardy had occurred because the charges required an element that the other did not. (Ex. E, p. 3-4)

## III.  Claim Three--Counsel Was Ineffective for Failing To Explain All Options to Gardner During the Plea Negotiation Process So that He Could Make an Informed Decision Concerning His Guilty Plea.

### A.    Failure to Raise A Federal Claim in His Petition for Certiorari Review to the Supreme Court of Alabama

28. Gardner argues in his habeas corpus petition that his counsel was ineffective because he failed to explain his options to him during the plea negations, and only presented him with the choice of proceeding to trial and receiving the death penalty or pleading guilty. (Gardner's pet., p. 6) This federal

issue, however, was not raised in his certiorari petition to the Supreme Court of Alabama, as required by O'Sullivan to fully exhaust the claim.  See O'Sullivan, 526 U.S. at 845.  Gardner did not argue in his petition that the Alabama Court of Criminal Appeal's opinion conflicted with federal law; he only argued that it conflicted with state law.  Furthermore, his argument to the Supreme Court of Alabama, appears to rest on the issue that he should have been granted an evidentiary hearing on his Rule 32 petition.  This is an interpretation of state law and the Alabama Rules of Criminal Procedure; it does not implicate a federal right, and is therefore, not cognizable in this petition.  See Estelle, 502 U.S. at 67-68; McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

29. Concerning this claim, Gardner raised the following state law issue in his certiorari petition.

(3) The basis for this petition for the writ is that the decision of the appellate court is in conflict with its prior decision on the same point of law.  In its present decision the appellate court held:

"A petition is 'meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concenring [sic.] the nature and effect of t [sic.] those facts) sufficient to show that the petitioner is entitled to relief if those facts are true.  Ex parte Boatwright, supra Ex parte Clisby, 501 So. 2d 483 (Ala. 1986)."

Moore v. State, 502 So. 2d 819, 820 (Ala. 1986). In the case [sic.] In the case of Pugh v. State, 729 So. 2d 359 (Ala. Crim. App. 1998)[,] the appellate court held:

> "To prevail on a claim of ineffective assistance of counsel, in connection with a guilty plea, petitioner must show that but for counsel's errors, he would not have pleaded guilty but insisted on proceeding to trial."

These statement [sic.] of law are in conflict and the issue is which holding should be followed on this point of law.

(Ex. H, p. 4)

30. There is absolutely no discussion in this argument of federal law; no federal law is cited or referenced. Nor does Gardner argue that the Court of Criminal Appeals's opinion conflicts with applicable federal law concerning ineffective assistance of counsel claims. Gardner's sole contention is that the state court's opinion concerning when a petition is meritorious, which would be a purely state law issue, conflicts with Pugh v. State, 729 So. 2d 359 (Ala. Crim. App. 1998). Gardner had the burden to alert the Supreme Court of Alabama that he was raising a federal issue not just merely an issue based on an alleged conflict between state court opinions. See Duncan, 513 U.S. at 365-66. Gardner failed to even reference a federal case in this argument. See Isaacs v. Head, 300 F.3d 1232, 1254 (11th Cir. 2002) (holding that a one-sentence claim that only cites state law and does not cite any federal cases or use any language to alert the state court that

the petitioner was raising a federal claim in the state court does not "fairly present"

a federal claim to the state court).

     31. Although, the Supreme Court in Baldwin v. Reese, 541 U.S. 27, 32

(2004), stated:

> [If a] litigant wish[es] to raise a federal issue[, he] can easily indicate
> the federal law basis for his claim in a state court petition or brief, for
> example, by citing in conjunction with the claim the federal source of
> law on which he relies or a case deciding such a claim on federal
> grounds, or by simply labeling the claim 'federal.'"

This Court, however, held in McNair v. Campbell, 416 F.3d 1291, 1302-

1303 (11th Cir. 2005):

> If read in a vacuum, this dicta [from Baldwin] might be thought to
> create a low floor indeed for petitioners seeking to establish
> exhaustion. However, we agree with the district court that this
> language must be "applied with common sense and in light of the
> purpose underlying the exhaustion requirement [:] 'to afford the state
> courts a meaningful opportunity to consider allegations of legal error
> without interference from the federal judiciary.' " McNair, 315
> F.Supp.2d at 1184, 1303 (quoting Vasquez v. Hillery, 474 U.S. 254,
> 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986)). This is consistent
> with settled law established by the Supreme Court. See Picard, 404
> U.S. at 275, 92 S.Ct. at 512 ("We emphasize that the federal claim
> must be fairly presented to the state courts."). We therefore hold that "
> '[t]he exhaustion doctrine requires a habeas applicant to do more than
> scatter some makeshift needles in the haystack of the state court
> record.' " Kelley, 377 F.3d at 1345 (quoting Martens v. Shannon, 836
> F.2d 715, 717 (1st Cir.1988)).

Gardner failed to meet the requirement of presenting a federal issue, as mandated

by McNair. In fact, even if the "low floor" mentioned in the dicta from Baldwin,

were to be taken literally, Gardner even failed to meet this low threshold in

presenting a federal claim of ineffective assistance of counsel in his certiorari petition.

32. Because Gardner failed to present his federal claim of ineffective assistance of counsel properly in his certiorari petition to the Alabama Supreme Court, he has not fully exhausted this claim. See O'Sullivan, 526 U.S. at 845. He would be prevented from returning to state court to relitigate this federal claim in the Alabama trial court, the Alabama Court of Criminal Appeals, and eventually the Alabama Supreme Court by Rules 32.2(a)(4), Rule 32.2(c), and Rule 32.2(d) of the Alabama Rules of Criminal Procedure, which mandates that ineffective assistance of counsel claims cannot be raised in a successive petition. Therefore, Gardner has procedurally defaulted on his federal claim of ineffective assistance of counsel when he did not raise such a claim in his certiorari petition, but only argued state law issues in the petition.[5]

---

[5] It is irrelevant whether Gardner raised the federal issue in his brief in support of the petition, if he did. Under Rule 39(b)(4) of the Alabama Rules of Appellate Procedure, in effect at the time Gardner filed his petition, the petitioner was no longer permitted to file a brief in support of the petition, unless the petition was granted. Even if Gardner was unaware of this rule change (and the Respondents are not conceding that he was unaware), the longstanding rule has been that issues that are not raised in the certiorari petition cannot be raised for the first time in the brief. "'It has long been settled that this Court can only address those issues that are set out in the petition as grounds for certiorari.' Ex parte Franklin, 502 So.2d 828, 828 n. 1 (Ala.1987) (citing Nix v. State, 271 Ala. 628, 126 So.2d 123 (1961); Liberty Nat'l Life Ins. Co. v. Stringfellow, 265 Ala. 561, 92 So.2d 927 (1957))." Ex parte Birmingham News, Inc., 778 So. 2d 814, 818 (Ala. 2000). Therefore, Gardner would still have had to raise the federal issue in his certiorari petition.

**B.      Gardner Also Procedurally Defaulted on His Ineffective
Assistance of Counsel Claims Because He Failed To Comply With
Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal
Procedure.**

33. The Alabama Court of Criminal Appeals, invoking a state procedural

rule, concluded that Gardner was not entitled to relief because he did not plead

specific facts that would entitle him to relief.

> Moreover, Gardner did not meet his burden of pleading and proving
> that he received ineffective assistance of counsel with specific facts
> that would entitle him to relief. Thus, the trial court did not err when it
> held that Gardner did not meet the criteria outlined in Strickland v.
> Washington 466 U.S. 668 (1984), and in denying relief as to this
> claim.
>
> In Strickland, supra, the United States Supreme Court
> articulated two criteria that must be satisfied to show ineffective
> assistance of counsel. A defendant has the burden of showing (1) that
> his counsel's performance was deficient and (2) that the deficient
> performance actually prejudiced the defense. To prove prejudice,
> "[t]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different." Id. at 694. "A reasonable probability is a
> probability sufficient to undermine confidence in the outcome." Id.
> Furthermore, "a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable
> professional assistance." Id. at 689.
>
> Rule 32.3, Ala.R.Crim.P., states that " [t]he petitioner shall
> have the burden of pleading and proving by a preponderance of the
> evidence the facts necessary to entitle the petitioner to relief." Rule
> 32.6(b), Ala.R.Crim.P., states that " [t]he petition must contain a clear
> and specific statement of the grounds upon which relief is sought,
> including full disclosure of the factual basis of those grounds. A bare
> allegation that a constitutional right has been violated and mere

conclusions of law shall not be sufficient to warrant any further proceedings."

> "A petition is 'meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986) ."

Moore v. State, 502 So.2d 819, 820 (Ala.1986).

Although Gardner argues that he would not have pleaded guilty had his counsel told him there was a possibility that the jury would have found him guilty of murder or felony murder as a lesser-included offense of capital murder, **his petition contained no specific facts supporting this claim which would entitle him to relief.**

(Ex. E, p. 6) (emphasis added)  The Court also wrote in its conclusion, "As discussed above, Gardner's claims were either precluded, insufficiently pleaded, or lacked merit. Thus, summary disposition was appropriate." (Ex. E, p. 7)  The only discussion of insufficient pleading in the entire opinion was when the Court of Criminal Appeals discussed Gardner's failure to sufficiently plead his ineffective assistance of counsel claims. (Ex. E, p. 5-6)  Therefore, the court clearly concluded that Gardner failed to sufficiently plead his ineffective assistance of counsel claims, as required under Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure. (Ex. E, p. 5-6)  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived

29

the state courts of an opportunity to address those claims in the first instance."

Coleman v. Thompson, 501 U.S. 722, 732 (1992).

> In habeas, if the decision of the last state court to which the petitioner
> presented his federal claims fairly appeared to rest primarily on
> resolution of those claims, or to be interwoven with those claims, and
> did not clearly and expressly rely on an independent and adequate
> state ground, a federal court may address the petition.

Id. at 735. To be entitled to this presumption, however, "the decision of the last

state court to which the petitioner presented his federal claims must fairly appear to

rest primarily on federal law or to be interwoven with federal law." Id.

34. The Alabama Court of Criminal Appeals relied heavily on the pleading

rules of Rule 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure to

conclude that Gardner is not entitled to relief on his ineffective assistance of

counsel claims, because he failed to adequately plead his claims. (Ex. H, p. 5-6) It

was those state procedural rules that the Court of Criminal Appeals primarily used

to deny Gardner's ineffective assistance of counsel claims. Therefore, these rules

should constitute an adequate procedural bar, and because Gardner can no longer

return to state court to relitigate his ineffective assistance of counsel claims in more

detail, under Rules 32.2(a)(4), 32.2(c) and 32.2(d) of the Alabama Rules of

Criminal Procedure, this Court should foreclose review of the claims. "[W]here

the state court correctly applies a procedural default principle of state law to arrive

at the conclusion that the petitioner's federal claims are barred ... the federal court

[is required] to respect the state court's decision." Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999). This Court should respect the pleading rules of the Alabama Rules of Criminal Procedure and conclude that Gardner is procedurally defaulted from raising his ineffective assistance of counsel claims in federal court.

### C.     Cause and Prejudice or Miscarriage of Justice

35. The only way that Gardner can overcome his procedural default for failing to raise his federal issue in his state certiorari petition, (Section A, ¶ 29-33), or in the alternative, failing to adequately plead facts to support his ineffective assistance of counsel claims (Section B, ¶ 34-35), is to either demonstrate cause and actual prejudice to excuse the default or prove a fundamental miscarriage of justice requires review of his claims. See Coleman, 501 U.S. at 750; Smith, 256 F.3d at 1138. Gardner has not provided evidence to support either remedy for default. He has not explained why he could not have presented his ineffective assistance of trial counsel claims as a federal issue in his petition for certiorari review to the Supreme Court of Alabama. Nor has he demonstrated why he could not have pleaded more specific facts to satisfy Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure. Further, he has not shown any fundamental miscarriage of justice would arise from failure to review these claims -- he has not alleged or proved that he is actually innocent of the crime. See Schlup v. Delo,

513 U.S. 298, 324 (1995). Therefore, this Court should not review his ineffective

of trial counsel claim, because he cannot overcome his procedural defaults.

### D.    Decision Not Contrary to Federal Law

36. Even if this Court does not agree that Gardner is procedurally defaulted

from raising his ineffective assistance of counsel claims, he is still not entitled to

relief, because the Alabama Court of Criminal Appeals's decision was not an

unreasonable application of United States Supreme Court precedent. See

Williams, 529 U.S. at 404-05. Gardner argued that his counsel was ineffective

under Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474

U.S. 52 (1985), because counsel was ineffective for failing to explain to him the

possible lesser-included offenses of the capital murder charge, and had he known

he could have been convicted of a lesser-included offense, he would not have

pleaded guilty. (Ex. C, p. 25-27) The Court of Criminal Appeals correctly applied

the Strickland standard to conclude that it was not outside the wide scope of

effective representation for counsel's failure to explain to him, if true, the lesser-

included offenses of capital murder, because to do so, would provide a "false

hope" that Gardner could be convicted of a lesser-included offense when the

evidence did not support a charge on felony murder or intentional murder. (Ex. E,

p. 5-7)

> Although a defendant is entitled to a charge on a lesser offense if there
> is any evidence supporting the charge, Ex parte Hannah, 527 So. 2d

675 (Ala. 1988), charges on lesser-included offenses should not be given where the evidence permits no reasonable conclusion other than that the defendant guilty as expressly charged or is not guilty of any offense. Love v. State, 677 So. 2d 1272 (Ala. Crim. App. 1996). Assuming Gardner's claim is true, given that no evidence supported an instruction on either murder or felony murder, it would have been unwise for Gardner's counsel to have offered him false hope that the court would instruct the jury on lesser-included offenses or that the jury would somehow disregard eyewitness testimony to convict him of any offense other than capital murder in the death of Travis Benefield. Thus, we fail to see how counsel could have been ineffective for failing to advise him about the existence of lesser-included offenses when the evidence did not support instructing the jury on these charges.

(Ex. E, p. 7)  The Supreme Court of the United States, in Hopper v. Evans, 456 U.S. 605, 610-612 (1982), clarified that capital defendants were only constitutionally entitled to instructions on lesser-included offenses when the evidence warranted it.  The undisputed evidence established that:

[T]he evidence against Gardner was overwhelming, including the eyewitness testimony of the one victim who survived the robbery and shootings at the Premium Package Store. Ray Davis testified that he was able to identify Gardner as one of the four males who entered the store, forced him to open the store's safe, and shot both store employees, killing Travis Benefield as he lay begging for his life and seriously wounding Davis. Moreover, evidence was presented that another person overheard Gardner and his cohorts planning the robbery several days before the robbery-homicide occurred.

(Ex. E, p. 6-7)  There was also evidence that Gardner, was one of the three men who entered the store with guns firing, and that Travis Benefield was initially struck twice from rounds.  (Ex. A, S.R. 55, 57)  There was no rational theory, based on the evidence, that supported a charge on intentional murder where the

murder and robbery were part of one scheme. See Walker v. Jones, 10 F.3d 1569, 1573-74 (11th Cir. 1994). There was also no rational basis to instruct the jury on felony murder in the death of Travis Benefield. "The offense of felony murder involves an intended felony and an unintended homicide." Dunaway v. State, 746 So. 2d 1021, 1037 (Ala. Crim. App. 1998). The evidence established that Gardner and his cohorts entered the store shooting, and that Travis Benefield was struck twice. (Ex. A, S.R. 55) There was also undisputed evidence that one of Gardner's accomplices shot Travis Benefield intentionally in the back of the head, and that Gardner aided and abetted the others during the robbery-murder. Therefore, there was no rational theory from which the jury could have been instructed on the lesser-included offense of felony murder, an unintentional homicide.

37. Because there was no rational basis from the evidence that would have supported these lesser offenses, the Court of Criminal Appeals did not apply Strickland in an unreasonable manner in concluding that:

> [G]iven that no evidence supported an instruction on either murder or felony murder, it would have been unwise for Gardner's counsel to have offered him false hope that the court would instruct the jury on lesser-included offenses or that the jury would somehow disregard eyewitness testimony to convict him of any offense other than capital murder in the death of Travis Benefield. Thus, we fail to see how counsel could have been ineffective for failing to advise him about the existence of lesser-included offenses when the evidence did not support instructing the jury on these charges.

(Ex. H, p. 7)  Therefore, under <u>Williams</u>, 529 U.S. at 404-05, Gardner is not entitled to habeas relief.

## IV.    Applicability of the One-Year Limitation Period

38. Title 28 U.S.C. § 2244(d)(1) applies a one-year statute of limitation to an application for a writ of habeas corpus to an individual incarcerated pursuant to a state court judgment.

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

39. The legislation enacting the one-year statute of limitation applicable to federal habeas corpus petitions became effective on April 24, 1996.  <u>See</u> <u>Carey v.</u>

Saffold, 536 U.S. 214, 217 (2002) (noting the effective date of the federal limitation period); Drew v. Dept. of Corr., 297 F.3d 1278, 1282 (11th Cir. 2002) (same). In cases where the conviction is obtained following the one-year period, the defendant has one year from the date on which his conviction becomes final to mount a federal challenge. Title 28 U.S.C. § 2244(d)(1)(A).

40. Gardner's conviction became final on December 9, 2003. Two-hundred fifty-seven days elapsed between his conviction becoming final and the filing of his Rule 32 petition, on August 22, 2004. (Ex. A, C. 13 ) This tolled the time for filing his federal habeas corpus petition. Title 28 U.S.C. § 2244(d)(2).

41. The denial of his post-conviction petition became final on January 13, 2006. (Ex. L) One-hundred one days elapsed between the denial of the petition and the filing of his federal habeas corpus petition. Therefore, his federal petition is timely because only a total of 358 days, with the tolling period, elapsed between his conviction becoming final and the filing of his federal petition.

Respectfully submitted,

Troy King
*Attorney General*

Jean-Paul M. Chappell
*Assistant Attorney General*

36

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2006, I filed the foregoing with the Clerk of the Court (excluding exhibits) and I hereby certify that I have mailed (excluding exhibits) by United States Postal Service the document to the following non-CM/ECF participants:  Willie L. Gardner, AIS# 231984, Donaldson Correctional Facility, 100 Warrior Lane, Bessemer, AL  35023-7299.

Respectfully submitted,

Jean-Paul M. Chappell (CHA073)
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL  36130-0152
Telephone: (334) 242-7300
Fax: (334) 242-2848

14457/95071-001